# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00455-CR

**Dustin Anthony Simmang, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2009-209, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Dustin Anthony Simmang guilty of aggravated kidnapping and aggravated assault. *See* Tex. Penal Code §§ 20.04, 22.02. The trial court assessed appellant's punishment, enhanced by a prior felony conviction, at confinement for 40 years in the Institutional Division of the Texas Department of Criminal Justice for each offense, ordering the sentences to run concurrently. *See id.* §§ 12.32, .33, .42(b), (d). On appeal, appellant complains about the admission of gang-membership evidence during the guilt-innocence phase of trial and the imposition of multiple punishments in violation of the prohibition on double jeopardy. We affirm the trial court's judgments of conviction.

## BACKGROUND

Appellant and Christine Lundgren had been dating for three to four months when, on April 17, 2009, they left Lundgren's children with her mother so they could go out for the evening.

The couple visited several places, including the apartment of appellant's sister, consuming alcohol and Xanax throughout the evening, and ultimately ended up at a local bar. At that point Lundgren was, as she described, "completely inebriated." She told appellant that she needed to go home, and they left the bar. Lundgren next remembered waking up in the back seat of her Ford Explorer confused as to why they were not home. Eventually, they arrived back at her apartment. She remembered getting out of her SUV, walking up the stairs to her apartment, going inside her apartment, removing her clothes, and going to her bed, where she "passed out."

Her next memory is being awakened abruptly when appellant yanked her out of bed by her ankles, demanding that she drive him to San Antonio. Lundgren refused and they argued.[1] As his anger escalated, appellant pinned her to the wall of her bedroom, choking her by pressing his forearm against her neck. As he did so he threatened Lundgren's life and the lives of her children if he went to jail. Lundgren had difficulty breathing and could not speak, but fought back and managed to break away. She tried to escape across the bed, but appellant pursued her. He caught her and pinned her down on the bed, straddling her as he choked her again with his forearm against her neck. Lundgren fought back once more and again got away from appellant. At that point she grabbed her robe off of the closet door and pulled it on as she ran out of the apartment. Appellant followed, chased her down the stairs, and tackled her in an area between her apartment building and

---

[1] Apparently the keys to appellant's truck, parked at Lundgren's apartment, were locked inside the truck. Appellant wanted Lundgren to drive him to his apartment in San Antonio to retrieve a spare set. Lundgren testified, however, that she only discovered this after returning from the hospital later that morning when she saw the keys in the truck. At the time he made his demand, she did not know why appellant wanted her to drive him to San Antonio. She refused because she had an important meeting at work later that morning and was still intoxicated. Instead, she offered her keys to appellant so he could drive himself.

the office for the apartment complex. Lundgren briefly escaped his hold by slipping out of her robe when he grabbed it, but appellant again tackled her and pinned her against the ground. Once again he choked her with his forearm against her neck. Lundgren was unable to break free this time.

Appellant then grabbed Lundgren by her hair and dragged her, clad only in her underwear, to her Explorer, hitting her along the way as she struggled to escape. Appellant was able to open the driver's door of her SUV, force Lundgren inside, and follow her in. When she tried to exit, appellant "bashed" the left side of her head into the center console, causing her to lose consciousness. Appellant backed the SUV up, hitting a neighbor's car parked in the lot, and then drove out of the parking lot.

When Lundgren regained consciousness in the Explorer, she continued to attempt to escape from appellant. As appellant drove, she grabbed the bottom of the steering wheel and pulled it. When he attempted to correct, she struggled with him over the steering wheel, pulling it the other way. The Explorer crashed into a guardrail and came to a stop. Lundgren jumped out and ran to the first set of headlights she could see, still clad only in her underwear. Police arrived at the accident scene and arrested appellant.

Appellant was subsequently charged by indictment with aggravated kidnapping, retaliation, and aggravated assault. At trial, Lundgren testified to the above-described events. She said that she never consented to going with appellant. She testified about the injuries she sustained during the altercation, stating that the injuries she received that night were inflicted by appellant, not self-inflicted injuries sustained by bumping into things in her intoxicated state as appellant's counsel suggested. Photographs depicting the injuries she described were admitted into evidence.

3

She expressed that she felt terrorized by appellant's conduct and feared for her life. Lundgren also testified about the threat appellant made during the altercation in her apartment, indicating that he told her that if he went to jail he or "the brotherhood" would kill her and her children.[2]

A Sexual Assault Nurse Examiner, Debra Sterling, testified that she examined Lundgren at the hospital on April 20, 2009, and observed bruising and broken capillaries across Lundgren's neck. Sterling opined that these injuries were consistent with the choking events Lundgren described—being "strangled with [appellant's] forearm" several times which caused repeated loss of awareness or loss of consciousness. The nurse characterized the injuries on Lundgren's body as "extensive" and testified that they were consistent with repeated blunt force trauma. Two body diagrams documenting the injuries were admitted into evidence.[3] Sterling also testified, based on her training and experience, that the use of a forearm to strangle a person in the manner Lundgren described was capable of causing death or serious bodily injury.

Two of Lundgren's neighbors testified about being awakened in the early morning hours of April 18, 2009. Joanne Gordon, a retired minister and part-time piano teacher, testified that she was awakened by the sound of a car alarm at around 3 a.m. She lay in bed, unable to fall back

---

[2] The record contains conflicting evidence about the exact phrasing of appellant's threat. Lundgren initially testified that appellant told her "if he went to jail, he was going to kill me and my children." She later testified, in response to the prosecutor's direct questions, that when she was interviewed that night she told law enforcement officers that the threat appellant made was that the Aryan Brotherhood would kill her or her family. In a subsequent affidavit that she made in support of a protective-order application, which was admitted into evidence, Lundgren indicated that appellant said "the brotherhood" would kill her or her children. Ultimately, Lundgren testified that at the time of trial, more than two years after that night, she did not remember if the threat appellant made was that appellant or the Aryan Brotherhood would kill her and her children.

[3] Sterling testified that she had to start a second body diagram in order to document all of Lundgren's injuries.

asleep, and later heard the sound of people arguing and coming down the stairs. She looked out her bedroom window and saw a man "throw or shove" a woman into an SUV parked across from her car.[4] She saw the man follow the woman into the SUV and, once inside, shove the woman's head down. The driver backed up very fast, hitting her car, and then took off. Gordon said that it did not appear to her that the woman was going willingly.

Adrian Stone, a parts specialist and U.S. Army veteran, testified that in the early morning hours of April 18, he was awakened by the sound of a car alarm. He looked out his window and observed a male fighting with a short female who was wearing only panties. He described how the male forced the female, who was struggling to get away, into an SUV. Stone identified appellant in the courtroom as the male he saw that morning. He also described the blows that he saw appellant inflict on the female—strikes with an "overhanded hammer fist"—as she struggled to escape. He testified that in the manner executed, the strikes were capable of causing death or serious bodily injury.[5] He said the female looked "terrified"; because he feared for her life, he called 911. While he was on the phone with 911, he heard a loud crash and then saw the SUV speed off.

---

[4] Gordon testified that it was dark and she could not see clearly but she believed the two individuals were a man and a woman, with the person who was shoving the other person being a man and the person who was pushed into the SUV being a woman.

[5] Appellant objected to this testimony, asserting that Stone was not qualified to offer such an opinion. The trial court overruled the objection as untimely. Nevertheless, we note that either expert testimony or lay testimony may be sufficient to support a deadly weapon finding. *English v. State*, 647 S.W.2d 667, 668–69 (Tex. Crim. App. 1983); *Wilson v. State*, 391 S.W.3d 131, 137 (Tex. App.—Texarkana 2012, no pet.). Moreover, the record reflects that during his service in the Army, Stone received advanced training in unarmed combat.

Two law enforcement officers also testified on behalf of the State. Jack Kuhl, a patrol officer with the New Braunfels Police Department, testified about photographs he took of appellant at the time of his arrest on April 18, 2009. Jason Cline, a deputy with the Comal County Sheriff's Office, testified to his expert opinion about appellant's gang affiliations.

Appellant offered no evidence at trial. The jury convicted him of aggravated kidnapping (Count I) and aggravated assault (Count III) but acquitted him of retaliation (Count II). Appellant elected to have the trial court assess punishment. He pleaded true to an enhancement allegation of a prior robbery conviction. The court assessed his punishment at 40 years' imprisonment on each count, ordering the sentences to run concurrently. Appellant now appeals.

## DISCUSSION

Appellant raises four points of error on appeal. The first three complain about the trial court's admission of evidence relating to his gang membership. The fourth asserts a double-jeopardy violation.

### Evidence of Gang Affiliation

On appeal appellant contends that the trial court erred in admitting evidence related to his gang affiliation during the guilt-innocence phase of trial because it constituted impermissible character-conformity evidence in violation of Rule 404 of the Texas Rules of Evidence. He further argues that the prejudicial effect of the evidence outweighed any probative value, so it should have been excluded under Rule 403 of the Texas Rules of Evidence.

*The Complained-of Evidence*

In his first point of error, appellant asserts that the trial court erred in allowing Lundgren to testify about his affiliation with the Aryan Brotherhood of Texas. In his second point of error, he maintains that the trial court erred in admitting photographs of appellant, taken at the time of his arrest, that depict gang-related tattoos. In his third point of error, appellant argues that the trial court erred in admitting Deputy Cline's expert testimony about his gang membership.

Lundgren's Testimony

During cross-examination, appellant's counsel questioned Lundgren about an affidavit she had made in connection with seeking a protective order against appellant. In an attempt to reveal inconsistencies, counsel asked her about specific statements she made in the affidavit concerning the details of that night, such as the timing of events, where they went, and how much alcohol she and appellant had consumed. On redirect examination, the prosecutor offered the affidavit under the rule of optional completeness. *See* Tex. R. Evid. 107. Appellant objected to its admission, complaining that it was "bolstering." The court noted that appellant's counsel had "opened the door" by reading statements out of the affidavit during his questioning and ruled that the State was entitled to show the contents of the affidavit under the rule of optional completeness. The following exchange then occurred:

DEFENSE COUNSEL: To the extent that it would get into any other extraneous matters --

THE COURT: Well, be specific. If there's something in here that's extraneous --

7

DEFENSE COUNSEL: As it relates to the things that we have in the motion in limine.

THE COURT: I don't see any Aryan Brotherhood in here.

DEFENSE COUNSEL: Okay.

PROSECUTOR: Actually --

THE COURT: Is it in there?

PROSECUTOR: -- let's see. I just want to double-check. I don't want to lead [sic] the Court. It says "the Brotherhood." The in limine deals with prior convictions.[6]

THE COURT: Oh.

PROSECUTOR: "Affiliation with the Brotherhood" isn't necessarily per se prior conviction.

THE COURT: Well, yeah. I think your objection is overruled. I don't think -- I think you opened the door once you started questioning about it.

The court then admitted the affidavit. In subsequent questioning, the prosecutor asked Lundgren why she sought a protective order:

Q.   Did you fill out this affidavit, asking that the Court issue an order requiring [appellant] to stay so much of a distance away from you?

A.   Yes.

Q.   Why?

---

[6] Appellant filed two motions in limine, neither of which was ruled on by the trial court. One of the motions dealt with "all extraneous crime or misconduct evidence, which is not alleged in the indictment" which "includes, but is not limited to, the following: membership or affiliation with the Aryan Brotherhood and/or other gangs, gang related tattoos and including any and all offenses listed in State's Supplemental Notice of Intent and State's Notice of Intent." The other motion specifically addressed prior convictions and extraneous offenses.

8

A.     Because he had threatened my life and my children's life, and he was also affiliated with the ABT.

Q.     What does ABT stand for?

A.     Aryan Brotherhood of Texas.

DEFENSE COUNSEL:  Your Honor, I'm going to object -- I'm going to object to the testimony that she's stating that he was affiliated with that particular group.

THE COURT:  You can take her on voir dire, if you wish.

DEFENSE COUNSEL:  I don't wish to do that at this time.

THE COURT:  Very well.

The prosecutor then continued questioning Lundgren about her statements in the affidavit concerning the threat appellant made.

Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010). To preserve a complaint for appellate review, a party must have presented a specific and timely request, motion, or objection to the trial court. Tex. R. App. P. 33.1(a); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd). In addition, a party must secure an adverse ruling. *Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006); *see Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007); Tex. R. App. P. 33.1(a)(2). Here, the record does not reflect a ruling on appellant's objection. Instead, the trial court offered to allow counsel to take the witness on voir dire, which he declined to do. This did not constitute a ruling, express or implied, on the objection,

9

and counsel did not object to the court's failure to rule. *See* Tex. R. App. P. 33.1(a)(2). Appellant failed to secure an adverse ruling.

In addition, an objection is timely if made at the earliest opportunity or as soon as the grounds for the objection become apparent. *Pena*, 353 S.W.3d at 807; *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006); *see Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("[T]he failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence."). Here, the grounds for objection to evidence of appellant's gang affiliation were apparent when Lundgren testified that appellant was affiliated with the ABT. However, appellant only objected after the follow-up question—"What does ABT stand for?"—was asked and answered. Thus, appellant's objection was untimely.

We find that appellant failed to preserve his complaint about Lundgren's testimony about his gang affiliation for appellate review.[7] However, even had appellant preserved his complaint about the admission of this testimony for appellate review, for the reasons discussed below, we find no reversible error in the trial court's admission of this testimony. *See infra* pp. 14–21.

---

[7] We also note that a party must not only object but also state the grounds for the objection with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context of the objection. Tex. R. App. P. 33.1(a)(1)(A); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). "A general or imprecise objection suffices to preserve error only if the legal basis for the objection is *obvious* to the court and to opposing counsel." *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). In this case, appellant's objection asserted no legal basis for the objection at all. We recognize, however, that the parties had discussed similar evidence of gang affiliation during the offer of Lundgren's protective order affidavit and the State's proffer of Deputy Cline's expert testimony, so perhaps the grounds were obvious to the court and the State.

Photographs

The State called New Braunfels police officer Jack Kuhl to testify about photographs he had taken of appellant at the time of his arrest. These photographs depicted appellant's upper body, face, neck, arms, hands, and back and showed tattoos covering the upper part of appellant's chest, his shoulders, both arms, the left side of his torso, and his stomach area. Some of these tattoos were, apparently, related to appellant's gang affiliation. Appellant objected to the admission of the photographs on the grounds that they were "testimonial," irrelevant, and "impermissible character type evidence." However, discussions outside the presence of the jury demonstrated that the State offered the photographs not to show the tattoos, but to show the injuries on appellant at that time, which corroborated Lundgren's testimony that she fought back and struggled to escape during her abduction.[8] The trial court overruled appellant's objections, noting that the tattoos were "just the way [appellant] was." Appellant then asserted that the prejudicial effect of the photographs outweighed the probative value and asked that they be excluded under Rule of Evidence 403. Based on the allegations of the retaliation count, the trial court disagreed and overruled appellant's Rule 403 objection.[9]

---

[8] We note, however, that the State subsequently used some of the photographs during Deputy Cline's testimony to identify various gang-related tattoos. Yet, even as evidence of gang affiliation, the photographs were properly admitted. *See infra* pp. 14–19.

[9] On appeal, appellant does not complain about the trial court's overruling of his "testimonial" or relevance objections, but only asserts that the photographs were inadmissable character-conformity evidence under Rule 404(b) and should have been excluded under Rule 403 because the prejudicial effect outweighed the probative value.

Expert Testimony

The State called Jason Cline, a deputy with the Comal County Sheriff's Office, to testify about appellant's gang affiliation.[10] Before the deputy testified in front of the jury, appellant objected, complaining that evidence of appellant's gang membership was not relevant, was more prejudicial than probative under Rule 403, and was impermissible character evidence. The trial court overruled the objections, finding that the evidence was "definitely material" to the retaliation count. Appellant then moved for a mistrial, which the court denied.[11]

After establishing his credentials as an expert in gang and tattoo identification,[12] Deputy Cline testified about his experience with various gang groups, including "security threat groups" inside the prison, street gangs, and "cliques." He explained the differences between the groups, primarily related to the level of structural organization within them, and gave examples of

---

[10] The State initially proffered the deputy's testimony outside the presence of the jury during Lundgren's testimony. At that point, appellant objected on the ground of relevance, which the trial court, at that point, sustained. Appellant then indicated that it was not necessary to raise his Rule 403 objection at that time since the trial court had sustained his relevance objection.

[11] Appellant does not complain on appeal about the trial court's denial of his motion for mistrial. Nor does he complain about the court's ruling on his relevance objection. He only asserts that the expert testimony about his gang affiliation was inadmissable character-conformity evidence under Rule 404(b) and should have been excluded under Rule 403 because its prejudicial effect outweighed the probative value.

[12] Deputy Cline testified that he was the gang expert for the Comal County Sherriff's Office and had specialized training in gang and tattoo identification. He was also a member of several law enforcement task forces and investigative associations that deal specifically with gangs. He had several years' law enforcement experience related to gangs, in both prison and the county jail, and had 800 to 1,000 hours of training concerning gang and tattoo identification. He and another deputy created the identification and tracking system for documenting and tracking gang members housed in the Comal County jail. In addition, Deputy Cline testified that he conducts training sessions on the subject for other law enforcement agencies.

12

each type of group. The deputy testified that he had experience dealing with the Aryan Brotherhood of Texas, a security threat group, and the Peckerwoods, a clique that the Aryan Brotherhood and Aryan Circle (another security threat group) use as a recruitment pool. He explained that the recruitment process involves coming into prison as a Peckerwood, and then having to prove yourself to achieve membership in the Brotherhood or the Circle. Based on his review of the Comal County Sheriff's Office jail file on appellant, Deputy Cline opined that appellant was a member of the Peckerwoods. His opinion was based on appellant's various tattoos depicting Peckerwood affiliation, such as a tattoo of the word "Peckerwood" on his stomach as well as the numbers "2316" on his right inner forearm.[13] The prosecutor then showed the deputy the previously admitted photographs of appellant depicting the tattoos he described, and Deputy Cline testified that those tattoos were "indicative of [appellant] being affiliated with the clique the Peckerwoods." The deputy also testified that he did not know if appellant was currently, or ever had been, a member of the Aryan Brotherhood.[14]

*Standard of Review*

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court

---

[13] According to the deputy, the numbers 23 and 16 correspond to the 23rd and 16th letters of the alphabet, W and P, which stand for "White" and "Pride or Power." In addition, on redirect, Deputy Cline testified that he had reviewed previous testimony of appellant at the protective order hearing wherein appellant stated that 23 stood for "White" and 16 stood for "Pride."

[14] According to the deputy, appellant testified at the protective order hearing that he was not currently a member of the Aryan Brotherhood and said that he did not know if he ever had been a member. Consequently, Deputy Cline agreed with the prosecutor that it was possible that appellant had been an Aryan Brotherhood member.

abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

*Character-Conformity Evidence*

Texas Rule of Evidence 404(b) prohibits the admission of extraneous crimes, wrongs, or acts to prove a person's character or to show that the person acted in conformity with that character. *See* Tex. R. Evid. 404(b). However, otherwise inadmissible character-conformity evidence may be admissible under Rule 404(b) for some other purpose such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*; *Montgomery*, 810 S.W.2d at 387–88. This list is illustrative—the exceptions are neither mutually exclusive nor collectively exhaustive. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Further, "'Rule 404(b) is a rule of inclusion rather than exclusion.'" *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). "The rule excludes only that evidence that is offered (or will be used) *solely* for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)) (emphasis added).

Furthermore, the court of criminal appeals has explained that "'it has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum.'" *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex.

14

Crim. App. 2000) (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)); *see Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) ("The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense."). Thus, gang-membership evidence may be admissible under Rule 404(b) if it is relevant to show a non-character purpose that, in turn, tends to show the commission of the crime. *Ortiz v. State*, 93 S.W.3d 79, 94 (Tex. Crim. App. 2002) (evidence of incarcerated defendant's gang affiliation admissible under Rule 404(b) to show variety of non-character purposes relevant to showing defendant's guilt); *Vasquez v. State*, 67 S.W.3d 229, 239–40 (Tex. Crim. App. 2002) (evidence of appellant's gang affiliation relevant to show motive for alleged gang-related crime).

As charged in this case, a person commits the offense of retaliation if he intentionally or knowingly threatens to harm another by an unlawful act in retaliation for the service or status of another as a prospective witness.[15] *See* Tex. Penal Code § 36.06(a)(1)(A); *see also Cada v. State*, 334 S.W.3d 766, 770 (Tex. Crim. App. 2011) (discussing elements necessary to prove retaliation offense). Whether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault. *See Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.—Austin 1994, pet.

---

[15] Specifically, Count II of the indictment alleged that on the date in question, appellant

did then and there intentionally and knowingly threaten to harm Christine Lundgren by an unlawful act, by stating in words to the said Christine Lundgren, "if I get arrested for this then the Aryan Brotherhood is going to come for you and kill you and/or your children," or words to that effect, in retaliation for or on account of the service or status of the said Christine Lundgren as a prospective witness.

15

ref'd) (discussing threat element of telephone harassment). The meaning of statements can only be interpreted by considering the context in which they are made. *Id.* at 338. Thus, threats should be considered in light of their entire factual context, including the surrounding events and the reaction of the listeners. *Id.* at 337.

In this case, appellant's affiliation with the Aryan Brotherhood, through his membership in the Peckerwoods clique, was relevant to the credibility of the threat he made against Lundgren and her children. His gang membership was evidence of his capacity to carry out the threat, or have it carried out, which in turn made it more likely that he did in fact make the threat as Lundgren testified. Thus, appellant's gang affiliation was admissible, not for the purpose of showing character conformity but to illuminate the nature of the crime alleged. *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). His capacity to have the threat carried out—because he was in fact affiliated with the Aryan Brotherhood—was a circumstance of the offense that tended to prove the allegations in the indictment. The evidence was relevant for a non-character conformity purpose and, therefore, was admissible under Rule 404(b).[16]

---

[16] The fact that Deputy Cline opined that appellant was a member of the Peckerwoods clique rather than the Aryan Brotherhood does not render the gang-related evidence inadmissible. The testimony demonstrated that the two gang groups are affiliated. The jury is entitled "to draw reasonable inferences from basic facts to ultimate facts." *See Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)); *Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.—Austin 2001, pet. ref'd). In light of Cline's testimony, the jury could have reasonably inferred that appellant was affiliated with the Aryan Brotherhood through his membership in the Peckerwoods clique.

*Prejudice and Rule 403*

Having determined that evidence of the appellant's gang affiliation was relevant for a non-character conformity purpose, we must next weigh its probative value against its prejudicial effect. Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997). "The term 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Davis*, 329 S.W.3d at 806. "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* All testimony and physical evidence are likely to be prejudicial to one party or the other. *Id.*; *Jones*, 944 S.W.2d at 653. Thus, "[t]o violate Rule 403, it is not enough that the evidence is 'prejudicial'—it must be *unfairly* prejudicial." *Vasquez*, 67 S.W.3d at 240 (Tex. Crim. App. 2002) (emphasis in original); *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). It is only when there exists a clear disparity between the degree of prejudice produced by the offered evidence and its probative value that Rule 403 is applicable. *Davis*, 329 S.W.3d at 806; *Williams*, 958 S.W.2d at 196.

The potential improper basis here would be to attempt to show that appellant was a bad person and acted in conformity with his bad character simply because of his gang affiliation.

17

However, that was not the State's purpose in eliciting the evidence. The State's purpose was to show the jury that appellant's statement to Lundgren was in fact a threat. Without evidence of his affiliation with the Aryan Brotherhood, the jury would have been less able to understand appellant's statement as a credible threat. We conclude that the trial court did not err in concluding that the potential character-conformity inference did not substantially outweigh the relevant purpose of showing the credibility of the threat which, in turn, tended to show that the threat was in fact made.[17]

For the reasons set forth above, we cannot say that the trial court abused its discretion in admitting Lundgren's testimony, the photographs of appellant depicting his gang tattoos, or Deputy Cline's testimony about his gang membership.

*Harm Analysis*

Even assuming the trial court erred in admitting the complained-of evidence of appellant's gang affiliation, we would nevertheless conclude that the error did not constitute reversible error. *See* Tex. R. App. P. 44.2(b). The erroneous admission of evidence, including expert testimony, is non-constitutional error. *Jessop v. State*, 368 S.W.3d 653, 678 (Tex.

---

[17] Appellant asserts in his brief that the trial court's admission of the evidence was also erroneous because even if relevant to the retaliation count, the evidence was prejudicial to the remaining counts. However, appellant did not articulate this complaint to the trial court and never asked the trial court to sever the offenses for trial despite knowing that the State intended to offer evidence of appellant's gang affiliation because the State gave pretrial notice of such intent.

Appellant also complains in his brief that the trial court failed to conduct the balancing test mandated by Rule 403, but instead "skip[ped] over" the requirement because of the "mere allegation" in the retaliation count. However, the trial court is not required to perform the Rule 403 balancing test on the record, and when the record is silent, appellate courts must presume that the trial court performed the required balancing test. *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997); *Kappel v. State*, 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd).

App.—Austin 2012, no pet.); *Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.); *see Coble*, 330 S.W.3d at 280; *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Non-constitutional error is reversible only if it affects the substantial rights of the accused. *See* Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93; *Kirby*, 208 S.W.3d at 574.

In assessing potential harm, our focus is not on whether the outcome of the trial was proper despite the error but on whether the error had a substantial or injurious effect or influence on the jury's verdict. *Barshaw*, 342 S.W.3d at 93–94. We review the entire record to ascertain the effect or influence on the verdict of the wrongfully admitted evidence. *Id.* at 93; *see Coble*, 330 S.W.3d at 280 (in conducting harm analysis "we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence"). We consider all the evidence that was admitted at trial, the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case. *Barshaw*, 342 S.W.3d at 94. We may also consider the jury instructions, the parties' theories of the case, closing arguments, voir dire, and whether the State emphasized the error. *Id.*; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). In analyzing the erroneous admission of expert testimony, we may consider, among other things: (1) the strength of the evidence of the appellant's guilt; (2) whether the jury heard the same or substantially similar admissible evidence through another source; (3) the strength or weakness of an expert's conclusions,

19

including whether the expert's opinion was effectively refuted; and (4) whether the State directed the jury's attention to the expert's testimony during arguments. *See Coble*, 330 S.W.3d at 286–88.

In her testimony, Lundgren described the events of that night, providing details of multiple choking incidents and her abduction by appellant as he dragged her by her hair to her Explorer, striking her repeatedly as she struggled to escape. Her testimony was corroborated by eyewitness testimony, photographic evidence, and medical evidence. The prosecutors briefly mentioned evidence of appellant's gang affiliation in closing argument, but only in connection with the retaliation offense to demonstrate the credibility of the threat appellant made. The State did not overly emphasize the evidence otherwise. Furthermore, we note that the jury acquitted appellant of the retaliation charge, suggesting that the evidence of his gang affiliation did not influence the jury.

After examining the record as a whole, including the strength of the State's case, we have fair assurance that the erroneous admission of evidence of appellant's gang affiliation, if it was error, did not influence the jury or had but a slight effect. Therefore, any error in admitting the complained-of evidence was harmless.

For the foregoing reasons, we overrule appellant's first, second, and third points of error.

**Claim of Double Jeopardy**

In his fourth point of error, appellant asserts that his convictions for both aggravated kidnapping and aggravated assault constitute double jeopardy. *See* U.S. Const. amends. V, XVI. According to appellant, the aggravated assault charged in Count III was a lesser-included offense of

20

aggravated kidnapping as charged in Paragraph A of Count I. Thus, appellant argues, he received multiple punishments for the same offense.

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. Const. amend. V. This clause protects against multiple punishments for "the same" offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). Generally, to preserve a multiple-punishments double-jeopardy claim for appellate review, a defendant must object at or before the time the charge is submitted to the jury. *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000). An appellant is excused from this preservation requirement and allowed to raise a multiple-punishments double-jeopardy claim for the first time on appeal only when "the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record, and when enforcement of the usual rules of procedural default serves no legitimate state interests." *Id.* at 643; *see also Langs v. State*, 183 S.W.3d 680, 682 (Tex. Crim. App. 2006) ("[T]he face of the trial court record must clearly show a double jeopardy violation before a defendant may successfully raise a 'multiple punishment' double jeopardy claim for the first time on appeal."). Appellant raises his double-jeopardy claim for the first time on appeal. Therefore, we must evaluate whether the face of the trial record clearly shows a double-jeopardy violation. *See Langs*, 183 S.W.3d at 687 (citing *Gonzales v. State*, 973 S.W.2d 427, 431 (Tex. App.—Austin 1998), *aff'd*, 8 S.W.3d 640 (Tex. Crim. App. 2000)); *Jimenez v. State*, 240 S.W.3d 384, 417 n.19 (Tex. App.—Austin 2007, pet. ref'd).

21

*Alternative Theories*

When separate theories for an offense are submitted to the jury disjunctively in the jury charge, a double-jeopardy violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double-jeopardy violation and there is sufficient evidence to support that valid theory. *Langs*, 183 S.W.3d at 687; *Gonzalez*, 8 S.W.3d at 641–42. The fact that the jury's verdict *could* have relied on a theory that would violate the Double Jeopardy Clause is not sufficient to show a constitutional violation clearly apparent on the face of the record. *Langs*, 183 S.W.3d at 687; *Gonzalez*, 8 S.W.3d at 643.

The indictment in this case charged appellant with aggravated kidnapping under four alternative theories in four separate paragraphs:

- Paragraph A alleged that appellant abducted Lundgren to facilitate the commission of aggravated assault with a deadly weapon, *see* Tex. Penal Code § 20.04(a)(3);

- Paragraph B alleged that appellant abducted Lundgren to facilitate the commission of retaliation, *see id.* § 20.04(a)(3);

- Paragraph C alleged that appellant abducted Lundgren with intent to inflict bodily injury, *see id.* § 20.04(a)(4); and

- Paragraph D alleged that appellant abducted Lundgren with intent to terrorize her, *see id.* § 20.04(a)(5).

Only the theory laid out in Paragraph A of Count I of the indictment—aggravating the kidnapping offense by alleging that appellant acted with the intent to facilitate the commission of aggravated assault—presents double-jeopardy concerns.

22

Even assuming that the aggravated kidnapping offense as charged in Paragraph A of Count I is the same as the aggravated assault offense charged in Count III for double-jeopardy purposes, the face of the record does not show a multiple-punishments violation because the jury's general verdict of guilty of aggravated kidnapping could have rested on one of the other paragraphs of Count I of the indictment. The jury was presented with evidence that appellant abducted Lundgren with the intent to facilitate the commission of aggravated assault (Paragraph A), abducted Lundgren with the intent to inflict bodily injury on her (Paragraph C), and abducted Lundgren with the intent to terrorize her (Paragraph D).[18] Each of these theories was then listed in the disjunctive in the jury charge, reflecting that the State needed to prove only one of the theories to prove the aggravated kidnapping charge. The jury could have convicted appellant of aggravated kidnapping without finding that he acted with intent to facilitate the commission of aggravated assault. Based on the evidence, the jury could have found instead that he acted with intent to inflict bodily injury to Lundgren or with intent to terrorize her. If the jury convicted under either of those two theories, there is no double-jeopardy violation. Because we do not know on which theory the jury relied in convicting appellant and there is sufficient evidence to support the other theories submitted, there is no double-jeopardy violation clearly apparent from the face of the record. *See Langs*, 183 S.W.3d at 687 (where jury charge includes alternative theories, only one of which would constitute double jeopardy, error is not apparent on face of record).

---

[18] Because the jury acquitted appellant of the retaliation offense, we do not include the kidnapping theory that appellant abducted Lundgren with the intent to facilitate the commission of retaliation (Paragraph B) in our analysis.

*Distinct Criminal Acts*

Moreover, the protection against double jeopardy does not apply to separate and distinct offenses that occur during the same transaction. *Ex parte Milner*, 394 S.W.3d 502, 513 (Tex. Crim. App. 2013); *Spradling v. State*, 773 S.W.2d 553, 556 (Tex. Crim. App. 1989). Thus, if two different attacks occur, even if close in time, a defendant may be charged with two separate assaultive offenses. *See Urtado v. State*, 333 S.W.3d 418, 424 (Tex. App.—Austin 2011, pet. ref'd); *see, e.g.*, *Sanchez v. State*, 269 S.W.3d 169, 171 (Tex. App.—Amarillo 2008, pet. ref'd) (holding that no double-jeopardy violation occurred where defendant was charged with both assault causing bodily injury and assault by threat against same victim because, "[t]hough rather close in time, the latter arose after a break from the former").

Here, the evidence shows that distinct criminal acts may have supported appellant's convictions for aggravated assault and aggravated kidnapping. Lundgren testified to multiple instances of choking—when appellant pinned her against the wall, when appellant pinned her on the bed, and when appellant tackled her outside her apartment and pinned her to the ground—as well as subsequent injuries sustained when appellant dragged her to the Explorer and then when he slammed her head into the center console, rendering her unconscious. Any one of the three choking instances could form the basis of a charge of aggravated assault, separate from a charge of aggravated kidnapping to facilitate the commission of aggravated assault based on the injuries inflicted during the dragging or after appellant forced Lundgren into the car. *See Urtado*, 333 S.W.3d at 425 (because assaults occurred in identifiable, discrete stages, even though close in time,

24

appellant was not punished twice for same offense, but for two different crimes). Thus, a double-jeopardy violation is not apparent from the face of this record. *See id.*

*Conclusion Regarding Double Jeopardy*

The record before us does not clearly reflect a double-jeopardy violation because (1) separate theories for aggravated kidnapping, with supporting evidence, were submitted to the jury disjunctively, and (2) the evidence demonstrates that separate and distinct criminal acts could support the convictions. Therefore, because appellant did not object at trial, he is not excused from the preservation requirement and has forfeited his right to raise his double-jeopardy claim for the first time on appeal. *See Langs*, 183 S.W.3d at 687. We overrule appellant's fourth point of error.

## CONCLUSION

We hold that the trial court did not abuse its discretion in admitting the evidence of appellant's gang affiliation and, further, that any error in the admission was harmless. In addition, we hold that no double-jeopardy violation is apparent from the face of this record. Accordingly, we affirm the judgments of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: September 11, 2013

Do Not Publish

25