NO. 07-07-0350-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 15, 2008
_____

LEONESEO SANCHEZ,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-415,499; HON. JIM BOB DARNELL, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Leoneseo Sanchez appeals his convictions on two counts of aggravated assault with a deadly weapon. Three issues lay before us. He initially contends that his two convictions violated his right against double jeopardy. Then, he argues that the trial court erred in allowing the investigating officers to reiterate at trial what the victim said to them, and in doing so, the trial court both denied him his right to confront witnesses and violated the hearsay rule. We affirm the judgment.

*Issue 1 - Double Jeopardy*

Appellant argues in his first issue that his conviction on both counts of aggravated assault with a deadly weapon subjected him to violation of his right against double jeopardy. The State had charged him with 1) intentionally, knowingly, and recklessly *causing bodily injury* to Melinda Aguilar (his girlfriend) by striking her with a hard object and using a firearm which in the manner of its use or intended use was capable of causing death and serious bodily injury, and 2) intentionally and knowingly *threatening* her with imminent bodily injury and using a deadly weapon that in the manner of its use or intended use was capable of causing death and serious bodily injury. It is appellant's contention that these allegations are merely two alternative ways of committing one crime which subjected him to punishment twice for that crime. We disagree and overrule the issue.

The protection against double jeopardy is inapplicable where separate and distinct offenses occur in the same transaction. *Spradling v. State,* 773 S.W.2d 553, 556 (Tex. Crim. App. 1989). This is true even if the acts are committed close in time to one another. *Hutchins v. State,* 992 S.W.2d 629, 633 (Tex. App.–Austin 1999, pet. ref'd, untimely filed); *see Marcotte v. State,* No. 07-01-0418-CR, 2003 Tex. App. LEXIS 225 at *6 (Tex. App.– Amarillo January 10, 2003, no pet.) (not designated for publication). And, that is the situation here.

Assault may be committed in several ways. One is to intentionally, knowingly or recklessly cause bodily injury to someone. TEX. PEN. CODE ANN. §22.01(a)(1) (Vernon Supp. 2008). Another is to intentionally or knowingly threaten someone with imminent bodily injury. *Id.* §22.01(a)(2). Moreover, these crimes may become "aggravated" under

2

the Penal Code either when they cause serious bodily injury or the actor uses or exhibits a deadly weapon during their commission. *Id.* §22.02(a)(1) & (2). According to the State, one of each occurred during appellant's two hour attack upon Aguilar, and because they were distinct offenses, double jeopardy did not apply.

The record before us reveals that Aguilar told the jury that appellant began assaulting her in her "boy's" room. She was removing a suitcase from the closet when appellant struck her. She was then dragged by the hair into the middle of the room where he continued his attack. Eventually, the couple found themselves in Aguilar's bedroom. Once there, appellant retrieved a handgun from the closet and hit Aguilar with it on her head. This blow resulted in her suffering a gash on her head which began bleeding. According to the victim, "[t]here was like blood everywhere . . . . " Around this time, she also heard the "snap" of the gun being fired, though no projectile was discharged.

Soon, appellant told Aguilar to enter the shower and wash off the blood on her. She complied, and as she did, she would peer out the sliding shower doors and see the bullets and gun. Furthermore, during this break from the physical assault, appellant was notably calm at times. And, when calm, he would also appear penitent. Yet, Aguilar noticed that he would "flare up all over again"; ". . . it was just going kind of back and forth." It was at this time, appellant stated that 1) there were two bullets in the gun, and "one was for [her] and one was for him," and 2) he was going to leave but that she should not call the police because by the time she did, "he could have already . . . hurt somebody in my family, or [her] boys."

Next, Aguilar was directed by appellant to exit the shower and get in bed. After she did, he spoke of seeing demons and "smiling" spirits in the room. Aguilar invited him to

3

pray with her, at which time appellant grew calm, asked how her injuries had happened, and fell asleep.

In considering the aforementioned evidence, we note various stages to the incident. The first involved actual, physical violence wherein appellant beat the victim with hands, feet, and firearm. It was during this period that she heard the weapon being discharged or misfired. The second stage began once appellant witnessed the blood coming from her scalp and told her to shower. No longer physically violent, his acts grew psychological in nature with him 1) growing calm only to become angry again, 2) threatening to use one of the two bullets on her, 3) threatening to harm her family and children if she contacted the police, and 4) speaking of demons and spirits.

While different in many respects from the factual scenario in *Ruiz v. State*, No. 13-01-0157-CR, 2002 Tex. App. LEXIS 735 (Tex. App.–Corpus Christi January 31, 2002, no pet.) (not designated for publication), our situation is akin to that in *Ruiz* in one important way, and because of that, we find *Ruiz* helpful. There, the appellant first struck his victim outside a bar while the victim was exiting a vehicle. He then stopped, entered the bar, spoke briefly with someone, and returned to the victim only to strike him again. That the attacks occurred in identifiable, discrete stages led the *Ruiz* court to conclude that the appellant was not being twice punished for the same crime. Rather, two different assaults actually occurred which entitled the State to prosecute Ruiz for both free of any limitations imposed by double jeopardy. *Id.* at *4-5.

As alluded to above, we too have a scenario depicting two different attacks. Though rather close in time, the latter arose after a break from the former, that break coming when

Aguilar entered the shower. Moreover, the assaults changed in nature from physical to psychological. Given this, we see no reason to stray from the holding in *Ruiz*. The State is correct; appellant was not twice tried, convicted, and punished for the same offense but rather for two different crimes. That each crime violated the same penal statute is inconsequential. *Marcotte v. State, supra.* Consequently, the limitations imposed by double jeopardy were not exceeded.

*Issue 2 - Confrontation Clause*

Next, appellant argues that he was denied his right to confront witnesses when the trial court allowed the investigating police officers to reiterate what Aguilar had told them about the assaults, who committed them, and how they transpired. We overrule the issue.

When the witness who uttered the words that are being repeated is present at trial for cross-examination, the accused is not being denied his right to confront that witness. *Eustis v. State,* 191 S.W.3d 879, 886 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd); *Hanson v. State*, 180 S.W.3d 726, 731 (Tex. App.–Waco 2005, no pet.); *Moore v. State*, 169 S.W.3d 467, 470 n.8 (Tex. App.–Texarkana 2005, pet. ref'd). Aguilar was both present for and testified at trial. Thus, appellant had the opportunity to confront her.

*Issue 3 - Hearsay*

Finally, appellant contends that the same out-of-court statements we addressed in issue two were inadmissible hearsay and, therefore, subject to exclusion on that ground. Since the trial court admitted them, it purportedly erred. We overrule the issue.

As previously mentioned, Aguilar appeared and testified at trial. She told the jury what occurred and explained how appellant both beat and threatened her with his hands

5

and with the gun. Moreover, one or more officers testified about seeing blood in the chamber of the handgun, a bleeding gash on Aguilar's head, and her "extremely swollen" face and eyes. Moreover, appellant does not question on appeal the admission of this evidence. Nor does he dispute the similarity between it and what the officers said Aguilar told them. So, what we have before us is the same evidence being presented to the jury through multiple sources to prove the same facts. It is this redundancy or cumulative nature of the evidence that proves fatal to appellant's argument. This is so because the admission of inadmissible evidence (such as hearsay) can be rendered harmless by the receipt of admissible evidence proving the same facts. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.–Houston [14th Dist.] 2007, no pet.); *Champion v. State*, No. 06-04–0141-CR, 2005 Tex. App. LEXIS 3733 at *9 (Tex. App.–Texarkana May 17, 2005, no pet.). And, upon reviewing the entire record, we hold that to be true here.

Accordingly, the judgment of the trial court is affirmed.


Brian Quinn
Chief Justice

Publish.