NUMBER 13-08-00286-CR


 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ANTHONY ROSS, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 117th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Justice Yañez
 


 Appellant, Anthony Ross, was indicted for one count of burglary of a habitation, two
counts of aggravated assault, and two counts of endangering a child. (1) After a bench trial,
Ross was convicted of one count of burglary and two counts of aggravated assault. The
trial court sentenced Ross to fifteen years' imprisonment. By three issues, Ross contends: 
(1) that his convictions for both burglary of a habitation and the aggravated assaults are
barred by the Fifth Amendment's guarantee against double jeopardy; (2) the trial court
improperly denied his motion for new trial without first conducting a hearing on the matter;
and (3) trial counsel rendered ineffective assistance of counsel. We affirm.

I. Background

 At trial, Michelle Mizes, witness for the State, testified that Ross was her ex-boyfriend and that she had a restraining order against him. According to Mizes, she
requested a restraining order against Ross because he had entered her home on two
previous occasions without her permission. Mizes stated that on one previous occasion,
after Ross entered her home without permission, a friend of hers, Keon Lovell, shot Ross. 

 Then, according to Mizes, on September 8, 2007, she was in her home with her
friend, Marcus Sneed, when Ross again entered her home without her permission. When
Mizes saw Ross, he was "standing there with a - with a gun." Mizes stated that Ross
pointed the gun at her face, and pointed the gun at Sneed. When Ross pointed the gun
at Sneed, he "cocked it," but the gun did not go off. Mizes testified that Ross said, "You
bitch this is like your fault. And I ain't even talking to you. I ain't got nothing to do with you. 
And this is probably the guy that shot me." Mizes explained to Ross that Sneed was not
the person who shot him, and asked Ross to allow Sneed to leave. Mizes stated that Ross
then hit her "in the eye with the gun." Mizes suffered a black eye.

 Ross told Mizes that it was her fault that he was facing ten years' probation and that
he "should just shoot [her] now." Mizes then grabbed her cell phone and ran outside
toward a field; Ross chased after her and shot as she fell to the ground. Ross then told
Mizes to take off her clothes and stated, "You don't [sic] too much to me. I want you to
strip off your clothes and get naked, and I ought to shoot you now." According to Mizes,
she was in fear for her life and thought that it was possible that Ross would hurt her with
the gun.

 Mizes testified that as Ross was leaving, he shot in the air a couple more times. 
However, Mizes acknowledged that the children were not in physical danger because they
were across the street during the incident.

 After Ross left, Mizes went into her house to check on Sneed and discovered her
bedroom door "busted open" and that Sneed had a cut across his forehead. Although
Mizes did not see Ross break down her bedroom door, she assumed that he had done so. 
According to Mizes, Ross also shot the windows of Sneed's car.

 Ross, testifying on his own behalf, claimed that he had not been at Mizes's home
the day of the alleged offenses, and that he had been mowing yards with his brother. 
Ross's brother, Edward Mitchell, stated that on September 8, 2007, Ross was mowing
yards with him. As a rebuttal witness, the State called Mizes's ten-year-old daughter, S.M.,
who testified that she saw Ross outside her home with a gun, and that he ran to a corn
field and shot into the air on September 8, 2007.

 The trial court found Ross guilty of burglary of a habitation and guilty of two counts
of aggravated assault. (2) Ross was sentenced to fifteen year's imprisonment. This appeal
ensued.

II. Separate and Distinct Acts

 By his first issue, Ross contends that a double jeopardy violation has occurred
because he was punished for "both Aggravated Assault and for Burglary of a
Habitation . . . when the facts supporting the two types of charges are the same." Ross
argues that this Court should affirm the burglary of habitation conviction and vacate the two
aggravated assault convictions. The State argues that the evidence "showed at least three
separate and discreet [sic] instances of aggravated assault, supporting the burglary and
the assaults charged in the indictment." We agree with the State.

 In this case, there are two units of prosecution because there are two complainants. (3) 
Prosecutions of a defendant for the aggravated assault of several individual victims is not
prohibited by double jeopardy principles, even if the assaults occur in the same criminal
transaction. (4) "Aggravated assault is a result-oriented offense that is complete with the
injury of a single individual." (5)

 Mizes testified that Ross entered her home without her consent and caused her
bodily injury when he struck her face with the gun. (6) Mizes also stated that Ross threatened
Sneed with imminent bodily injury when Ross pointed the gun at Sneed and cocked it. (7) 
The burglary charge was supported by the underlying aggravated assault of Mizes, and
count three was an aggravated assault committed against Sneed, a different complainant. (8) 
Therefore, we conclude, that the charges against Ross for burglary of a habitation and
aggravated assault of Sneed are not barred by double jeopardy. (9)

 However, we must now determine whether a double jeopardy violation occurred
when Ross was convicted of burglary based on the underlying aggravated assault of Mizes
and count two, aggravated assault of Mizes. (10) To convict Ross of burglary of a habitation,
the State had to prove the following elements: (1) Ross entered Mizes's habitation; (2)
without her consent; and (3) Ross committed or attempted to commit an underlying
felony. (11) Here the State alleged that the underlying felony offense was aggravated assault,
and it had to prove all of the elements of that offense including: (1) Ross intentionally,
knowingly, or recklessly caused bodily injury to an individual; and (2) exhibited or used a
deadly weapon. (12) In Langs v. State, the court of criminal appeals concluded that "a
defendant may not be punished for both the underlying felony and the burglary if the
burglary allegation is that the defendant entered a home" without consent and then
committed the underlying felony. (13) However, in this case, Ross has not been convicted of
both the underlying felony and the burglary.

 The facts of this case are similar to those in Sanchez v. State. (14) In that case, the
complainant testified that the appellant attacked her in her son's room, dragged her to
another room, and hit her on the head with a gun, causing her head to bleed. (15) The
appellant instructed the complainant to take a shower and wash off the blood. (16) Then, after
the complainant exited the shower, the appellant stated that he had two bullets in the gun,
"'one was for [her], and one was for him.'" (17) The appellant was convicted of two counts of
aggravated assault with a deadly weapon. (18)

 On appeal, the appellant complained that "his conviction on both counts of
aggravated assault with a deadly weapon subjected him to violation of his right against
double jeopardy." (19) The appellate court rejected this contention stating, "The protection
against double jeopardy is inapplicable where separate and distinct offenses occur in the
same transaction. This is true even if the acts are committed close in time to one
another." (20) The court found that there were various stages to the incident: the first
involved physical violence, while the second was psychological in nature. (21) The court of
appeals, citing Ruiz v. State, (22) concluded that the facts in Sanchez presented a scenario
depicting two different attacks, even though they were rather close in time. (23) In Ruiz, "the
appellant first struck his victim outside a bar while the victim was exiting a vehicle. He then
stopped, entered the bar, spoke briefly with someone, and returned to the victim only to
strike him again." (24) This Court, in Ruiz, concluded that the appellant "committed two
distinguishable, discrete assaults against [the victim] which amounted to separate
violations of the same statute[,]" and was "given punishment for two separate violations of
one statutory offense." (25) 

 Here, there were various stages to the incident. First, Ross entered Mizes's home
without her consent, stated that he wanted to kill her, and struck her with his gun. Then,
when Mizes managed to escape and run outside, Ross ran after her, shot his gun, and
when Mizes fell on the ground, Ross again threatened to kill her. 

 We conclude that like in Ruiz and Sanchez, the attacks against Mizes occurred in
identifiable, discrete stages, and Ross is not being punished for the same crime. Instead,
two separate aggravated assaults were committed against Mizes--once when she was hit
in the face with the gun, and a second time when Ross shot toward her and threatened her
outside. Therefore, the State was entitled to prosecute Ross for burglary with the
underlying aggravated assault that occurred when he hit Mizes with the gun after entering
her home without her permission and for aggravated assault when Ross threatened to kill
Mizes after she ran outside. (26) We overrule Ross's first issue.

III. Motion for New Trial Without a Hearing

 By his second issue, Ross contends that by not conducting a hearing on his motion
for new trial, he was denied "an opportunity to raise matters not determinable by the
record." (27)

 Pursuant to the Texas Rules of Appellate Procedure, "within 30 days after the date
when the trial court imposes or suspends sentence in open court but before the court
overrules any preceding motion for new trial, a defendant may, without leave of court, file
one or more amended motions for new trial." (28) An untimely amended motion for new trial
cannot form the basis of an appeal, and it is a nullity, even if an original motion for new trial
was timely filed. (29)

 We review a trial court's denial to conduct a hearing on a motion for new trial under
an abuse of discretion standard of review. (30) If a motion for new trial raises matters not
determinable from the record which could entitle the defendant to relief, the trial judge
abuses its discretion in failing to hold an evidentiary hearing, if the motion is supported by
affidavits specifically showing the truth of the grounds of attack. (31) If the affidavits do not
supply reasonable grounds which would entitle the accused to the relief sought, the trial
court does not abuse its discretion in refusing to hold a hearing. (32)

 Here, the trial court imposed sentence on February 8, 2008. Appellant filed a timely
motion for new trial on March 6, 2008, alleging that there was newly discovered evidence. 
However, Ross did not attach any affidavits in support of his motion. On March 10, Ross
filed an amended motion for new trial attaching six sworn affidavits. Ross argues that
these affidavits established that he was entitled to a hearing on the basis of newly
discovered evidence.

 The March 10 amended motion for new trial cannot form the basis of this appeal,
and it is a nullity. (33) Furthermore, we may not consider the affidavits attached to the
amended motion. (34) The only motion properly before the trial court was the March 6
motion. (35) Ross's motion for new trial raised matters not determinable from the record;
therefore, the trial court only abused its discretion in failing to hold an evidentiary hearing
if the March 6 motion was supported by affidavits. (36) However, Ross did not attach any
affidavits to the March 6 motion. Accordingly, we conclude that the trial court did not abuse
its discretion in failing to hold a hearing on Ross's motion for new trial. We overrule Ross's
second issue.

IV. Ineffective Assistance of Counsel

 By his third issue, Ross contends that his trial counsel rendered ineffective
assistance by conducting "an inadequate pre-trial investigation because he did not contact
or interview several witnesses who could have testified in support of his alibi."

 Ineffective assistance of counsel claims are evaluated under the two-part test
articulated by the Supreme Court in Strickland v. Washington. (37) The Strickland test
requires the appellant to show that counsel's performance was deficient, or in other words,
that counsel's assistance fell below an objective standard of reasonableness. (38) Assuming
appellant has demonstrated deficient assistance, he must then show that there is a
reasonable probability that, but for counsel's errors, the result would have been different. (39) 
In determining the validity of appellant's claim of ineffective assistance of counsel, "any
judicial review must be highly deferential to trial counsel and avoid the deleterious effects
of hindsight." (40)

 The burden is on appellant to prove ineffective assistance of counsel by a
preponderance of the evidence. (41) Appellant must overcome the strong presumption that
counsel's conduct fell within the wide range of reasonable professional assistance and that
his actions could be considered sound trial strategy. (42) A reviewing court will not
second-guess legitimate tactical decisions made by trial counsel. (43) Counsel's effectiveness
is judged by the totality of the representation, not by isolated acts or omissions. (44) 
Allegations of ineffectiveness must be firmly founded in the record. (45)

 Ross argues that although his trial counsel called one "alibi witness," he provided
details of other witnesses . . . who were never contacted or interviewed." Ross maintains
that he attached to his amended motion for new trial affidavits of "several other witnesses
who could have testified in support of [his] alibi." (46)

 The record is silent regarding trial counsel's reason for allegedly not contacting or
interviewing the potential witnesses who provided the affidavits. (47) Therefore, trial counsel's
ineffectiveness is not firmly founded in the record. (48) Ross has not overcome the strong
presumption that trial counsel's conduct fell within the wide range of reasonable
professional assistance and that his actions could be considered sound trial strategy. (49) 
Furthermore, Ross has not demonstrated that but for trial counsel's alleged error, the result
of his trial would have been different. (50) Therefore, we overrule Ross's third issue.

V. Conclusion

 We affirm the trial court's judgment.




 

 LINDA REYNA YAÑEZ,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 26th day of August, 2009.
1. See Tex. Penal Code Ann. §§ 22.02(a)(2) (Vernon Supp. 2008), 30.02(a)(3) (Vernon 2003); see also
id. § 22.01(a)(1), (2) (Vernon Supp. 2008).
2. See id. §§ 22.02(a)(2), 30.02(a)(3).
3. See Phillips v. State, 787 S.W.2d 391, 395 (Tex. Crim. App. 1990) (providing that the allowable unit
of prosecution for an assaultive offense is each complainant).
4. In re K.W.G., 953 S.W.2d 483, 486 (Tex. App.-Texarkana 1997, pet. denied).
5. Id.
6. See Tex. Penal Code Ann. §§ 22.01(a)(1) ("A person commits an offense if . . . [he] intentionally,
knowingly, or recklessly causes bodily injury to another."); 30.02(a)(3) (providing that a person commits a
burglary if he enters a habitation without the owner's consent and commits a felony or assault).
7. See id. § 22.01(a)(2).
8. See In re K.W.G., 953 S.W.2d at 486 (concluding that there was no double jeopardy violation when
the appellant was convicted of three counts of aggravated assault because each count "required proof of an
element that the others did not, i.e., the identity of the individual victim").
9. See Spradling v. State, 773 S.W.2d 553, 556 (Tex. Crim. App. 1989) (en banc) ("Prior cases have
also held, where there are two victims, a separate victim for each offense, the acts, though occurring at the
same time and place, constitute separate offenses involving separate issues of law, and separate
prosecutions are not barred by former jeopardy.").
10. We note that count two of the indictment charged that Ross committed the offense of aggravated
assault by threatening Mizes with imminent bodily injury. See Tex. Penal Code Ann. §§ 22.01, 22.02(a)(2).
11. Id. § 30.02(a)(3).
12. Id. § 22.02(a)(2).
13. 183 S.W.3d 680, 686 (Tex. Crim. App. 2006).
14. 269 S.W.3d 169 (Tex. App.-Amarillo 2008, pet. ref'd).
15. Id. at 170-71.
16. Id. at 171.
17. Id.
18. Id. at 170.
19. Id.
20. Id. (internal citations omitted).
21. Id.
22. No. 13-01-0157-CR, 2002 Tex. App. LEXIS 735 (Tex. App.-Corpus Christi Jan. 31, 2002, no pet.)
(mem. op., not designated for publication).
23. Sanchez, 269 S.W.3d at 171.
24. Id.
25. Ruiz, 2002 Tex. App. LEXIS 735, at * 5.
26. See Sanchez, 269 S.W.3d at 171; see also Ruiz, 2002 Tex. App. LEXIS 735 at *4 ("Thus appellant
committed two distinguishable, discrete assaults against Garcia which amounted to separate violations of the
same statute. Appellant, therefore, was not subjected to multiple punishments for the same offense. Rather,
he was given two punishments for two separate violations of one statutory offense.").
27. We note that Ross did not allege in his motion for new trial that trial counsel rendered ineffective
assistance.
28. Tex. R. App. P. 21.4.
29. Rangel v. State, 972 S.W.2d 827, 838 (Tex. App.-Corpus Christi 1998, pet. ref'd) (citations
omitted).
30. Wallace v. State, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003).
31. King v. State, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000) (en banc).
32. Id.; Jordan v. State, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (en banc).
33. Rangel, 972 S.W.2d at 838.
34. See id.
35. See id.
36. King, 29 S.W.3d at 569.
37. See Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing Strickland v.
Washington, 466 U.S. 668, 687 (1984)); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). 
38. Thompson, 9 S.W.3d at 812; see Strickland, 466 U.S. at 689, 694. 
39. Thompson, 9 S.W.3d at 812; see Strickland, 466 U.S. at 689, 694.
40. Thompson, 9 S.W.3d at 813.
41. Id.
42. See Strickland, 466 U.S. at 689; Jaynes v. State, 216 S.W.3d 839, 851 (Tex. App.-Corpus Christi
2006, no pet.).
43. State v. Morales, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008).
44. Thompson, 9 S.W.3d at 813; Jaynes, 216 S.W.3d at 851.
45. Thompson, 9 S.W.3d at 814.
46. We note that none of the affidavits provide an alibi for Ross at the time that the offense occurred,
except for Mitchell's affidavit. Mitchell's affidavit repeats his testimony that Ross was with him from 10:00 a.m.
until 5:00 p.m. mowing yards on September 8, 2007. None of the other potential witnesses' affidavits state
that they saw Ross after 10:00 a.m. on September 8, 2007. On the other hand, Mizes and her daughter both
testified that the offense occurred at approximately noon.
47. See Rangel, 972 S.W.2d at 838 ("Obviously, if trial counsel fails to seek out and interview potential
witnesses, the trial record is unlikely to indicate trial counsel's deficiency.").
48. See Thompson, 9 S.W.3d at 814.
49. See Strickland, 466 U.S. at 689; Jaynes, 216 S.W.3d at 851.
50. See Thompson, 9 S.W.3d at 812; see also Strickland, 466 U.S. at 689, 694.