**Opinion issued June 25, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00157-CR

————————————

**DEREK RENEE SOSA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1368317**

## MEMORANDUM OPINION

A jury convicted Derek Renee Sosa of the first-degree felony offense of aggravated sexual assault of a child under fourteen years of age and assessed his punishment at twenty-five years' incarceration in the Texas Department of

Criminal Justice, Institutional Division. In four issues, Sosa complains that (1) the trial court erred by allowing an emergency responder to testify as an outcry witness even though the State failed to comply with Texas Code of Criminal Procedure Article 38.072's mandatory notice requirements with respect to that witness, (2) the trial court erred when, without a hearing, it found that both the emergency responder and a forensic interviewer could testify as outcry witnesses under Article 38.072 regarding the same offense, (3) the trial court abused its discretion when it designated the emergency responder as an outcry witness under Article 38.072 because the alleged outcry statement is merely a general allusion of sexual abuse, and (4) the cumulative impact of the first three errors deprived Sosa of his right to a fair trial under the U.S. and Texas Constitutions. We affirm the trial court's judgment.

## Background

Sosa was indicted for sexually assaulting his live-in girlfriend's eight-year-old daughter, Jane, by unlawfully, intentionally, and knowingly causing Jane's sexual organ to contact Sosa's sexual organ.[1] Sosa pleaded "not guilty" and his guilt or innocence was tried to a jury.

---

[1] In order to protect the complainant's privacy, we will refer to her by the pseudonym "Jane." *See* TEX. CODE CRIM. PROC. ANN. art. 57.02(h) (West Supp. 2014).

2

## A.    Pretrial Matters

After voir dire and prior to the entry of Sosa's plea, the court heard pretrial motions outside the presence of the jury. During the bench conference, the State indicated that it intended to call three outcry witnesses: emergency responder Salvador Carbajal, Houston Police Department (HPD) Officer Mark Rooney,[2] and forensic interviewer Lisa Holcomb. The State had previously notified Sosa that it intended to offer outcry statements through Officer Rooney, Holcomb, and Deann Rodgers, the sexual assault nurse examiner (SANE) who examined Jane. The notice also included a written summary of each witness's statement. Sosa objected to the State's use of multiple outcry witnesses, and argued that Jane's mother or a woman named "Janet" was the proper outcry witness. After hearing arguments from counsel, the court allowed "EMS officer [Carbajal] to testify as an outcry witness and also the forensic interviewer [Holcomb] just as to the allegations."

## B.    Evidence and Testimony

The State called several witnesses to testify at trial including Jane, Carbajal, Rodgers, Holcomb, and the DNA analyst who analyzed Jane's vaginal swabs. The State also admitted into evidence Rodgers's report from her medical evaluation of Jane and a redacted videotaped interview that Sosa gave to HPD officers the same day he was arrested for assaulting Jane.

---

[2]    Officer Rooney did not testify at trial.

Jane testified that she lived in an apartment with her mother and Sosa, and that the day the police came to her apartment, Sosa had "hurt" her. Specifically, Jane testified that while her mother was at work, Sosa unlocked her bedroom door with a "shrimp stick,"[3] got undressed, and then climbed on top of her. Although she did not use the correct terminology, using anatomically correct dolls and a tissue box, Jane testified that Sosa inserted his penis into her vagina and then licked her vagina while they were in her bedroom. Sosa then carried her into his bedroom and did the same thing to her there. According to Jane, this had happened on six prior occasions. Jane also testified that when her mother called to check on her that morning, she told her mother what had happened, and her mother came home immediately and called the police.

Carbajal and his partner responded to a call at Jane's apartment regarding a possible sexual assault. Carbajal testified that he briefly interviewed Jane in order to determine if she was injured. Specifically, Carbajal testified that he asked Jane, "[W]as your mommy's boyfriend on top of you?," to which Jane answered, "[Y]es." When asked if she was hurting anywhere, Jane told Carbajal that her stomach hurt. She also told Carbajal that this had happened six times before. Carbajal, who did not ask Jane any more questions, checked Jane's vital signs and

---

[3]     The "shrimp stick" was identified as a skewer.

4

stomach for bruising, and then transported Jane and her mother to Texas Children's Hospital.

Rodgers, the SANE at Texas Children's who examined Jane the morning of the alleged assault, also testified at trial. Rodgers took a detailed medical history from Jane and collected various types of physical evidence, including vaginal swabs. Rodgers testified that Jane told her that she was at the hospital that day because her "mom's boyfriend" "Derek" hurt her. Jane also told Rodgers that "Derek" had "opened [her bedroom] door with a stick and laid on top of her in the front and then took her to his room where he did the same thing. And at that point, he had licked and [Jane] had only pointed to her vaginal area. Jane reported to Rodgers that both she and "Derek" were naked when this occurred and that it had happened six times before.

The State also offered Rodgers's notes from her examination of Jane as State's Exhibit 23. State's Exhibit 23, which was admitted under the business record exception with "no objection" from Sosa, includes the following statement:

> [Jane was] asked if someone hurt her [and Jane] stated, "Yes, Derek." [Jane] reports Derek is mom's boyfriend. . . . [Jane] stated, "I heard his belt go off after he opened my door with a stick. He started to lay on top of me in the front. I was in my room then he took me to his room. He did the same thing there and he licked my ([Jane] points to vaginal area). His clothes were off and he took my clothes off. That's all I remember." [Jane] reports Derek had done this to her before, [Jane] stated, "six times." Areas of pain: [Jane complained] of abdominal pain.

Holcomb, the forensic interviewer at the Children's Assessment Center who interviewed Jane, also testified at trial. Holcomb testified that Jane told her about the sexual abuse and that Jane used her own body, as well as anatomically correct dolls, to explain to Holcomb what Sosa had done to her. According to Holcomb, Jane was detailed and very demonstrative during the interview. Specifically, Jane told Holcomb that she:

> [H]eard [Sosa's] belt go off, and he put it on the floor, and then he laid on me. She had described this had happened, he had came off work, came in her room, went back in the bathroom, he took off his pants and shirt and then his belt came off in the bathroom, then he started to lay on me and he took me to his room. He laid on me until a little bit, but then he went to the side and then he went to the other side, then he went back in his room and go to sleep. My alarm woke me up, and he came running in my room and started doing the same thing again.

Holcomb testified that Jane positioned the dolls in multiple sexual positions, including one in which both the male and female doll were facing one another and the dolls' sexual organs were exposed and touching. According to Holcomb, Jane talked "about [Sosa] going up and down," and hurting her with his penis when his penis was touching the inside and outside of Jane's vagina. Jane also told Holcomb that Sosa licked her vagina or "private space" when Jane was trying to get away from him. Jane told Holcomb that this was the sixth time that Sosa had abused her.

The DNA analyst who tested the swabs collected by Rodgers testified that her analysis revealed that while 99.961 percent of the Caucasian, African

American, and Hispanic populations could be excluded as a contributor to the male DNA obtained from Jane's vaginal swabs, Sosa was within the .039 percent of the population that could not be excluded as a contributor. When asked about the significance of her findings, the analyst testified: "I can't testify to the significance. I can say that that is the lowest percentage that I can come back with on this test. If I had seen it one time in the database, that percentage would be higher, so more people could be included. So, since I didn't see it, this is the lowest percentage that my statistics will allow for this test."

The State also offered into evidence State's Exhibit 35-A, a redacted videotaped interview that Sosa gave to HPD officers after he was arrested for assaulting Jane. In that interview, which was published to the jury, Sosa told the officers that he had been drinking excessively the night before, and that he had no recollection of anything that happened between the time he was at the after-hours club and when he awoke the next morning.

Sosa told the officers that he knew he had an issue with sex, and that he felt like a "monster" and needed help. According to Sosa, sex was an issue for him, and that when he drinks, he "feel[s] like whatever's ready and available." Sosa recounted two prior incidents with Jane. In the first incident, Sosa and Jane had been playing around on the bed, and Jane started jumping around and straddled Sosa's lap, and he became sexually aroused. Sosa also told the officers that, on

7

another occasion when he had been drinking, he walked into Jane's room, removed her panties, and touched her "vaginal area" with his hand and then with his penis, but he did not think that he penetrated her vagina. Sosa claimed that Jane seemed receptive.

At trial, Sosa testified that he was traumatized by being accused of, and arrested for, molesting Jane when he was questioned by police, and that he was still hungover during the interview and made several incorrect statements. Sosa also testified that some of the statements he made in the video were "coerced." He also claimed that he was referring to Jane's mother, not Jane, when he described a particular sexual encounter to the police.

**Outcry Testimony Admitted Under Article 38.072**

In his first three issues, Sosa complains that the trial court abused its discretion by allowing Carbajal's improper outcry statements to be admitted into evidence. Specifically, Sosa contends that (1) the trial court erred by allowing Carbajal to testify as an outcry witness even though the State failed to notify him that it intended to offer outcry testimony through Carbajal fourteen days in advance of trial as required by Article 38.072, § 2(b), (2) the trial court erred when, without a hearing, it found that both Carbajal and Holcomb could testify as outcry witnesses under Article 38.072 regarding the same offense, and (3) the trial court abused its discretion when it designated Carbajal as an outcry witness under

8

Article 38.072 because Jane's statement to Carbajal was merely a general allusion of sexual abuse, not a proper outcry statement.

## A. Article 38.072

Article 38.072 provides a statutory exception to the hearsay rule for outcry statements made by a child victim of a sexual offense so long as that statement is a description of the offense and is offered into evidence by the first adult the complainant told of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2 (West Supp. 2014); *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). Outcry testimony admitted in compliance with Article 38.072 is considered substantive evidence, admissible for the truth of the matter asserted in the testimony. *Duran v. State*, 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.).

For the outcry statement to be admissible, Article 38.072 requires that earlier than the fourteenth day before the proceeding the State must notify the defendant of its intention to offer the outcry statement, provide the defendant with the name of the witness through whom it wishes to offer the statement, and provide the defendant with "a written summary of the statement." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b); *Sanchez*, 354 S.W.3d at 484 ("The State must provide a summary of the outcry statement that will be offered into evidence."). Article 38.072 also requires the trial court to conduct a hearing outside the presence of the

9

jury to determine that the outcry statement is reliable based on the time, content, and circumstances of the statement. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2). Article 38.072's notice and hearing requirements are mandatory and must be complied with in order for an outcry statement to be admissible over a hearsay objection. *See Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990). A trial court may designate multiple outcry witnesses so long as each one testifies about different offenses. *See Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (stating outcry witness is *first* adult that complainant told about offense).

## B. Harm

The erroneous admission of outcry testimony in violation of Article 38.072 is non-constitutional error. *See* TEX. R. APP. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Pursuant to Texas Rule of Appellate Procedure 44.2(b), a non-constitutional error must be disregarded unless it affected the defendant's substantial rights, i.e., the error had a substantial and injurious effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *see Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). This Court will not overturn a criminal conviction for non-constitutional error if we, after examining the record as a whole, have fair assurance that the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93.

In assessing the likelihood that the jury's decision was affected by the error, we consider everything in the record, including factors such as the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, whether the State emphasized the error, and whether overwhelming evidence of guilt was present. *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003). When the error involves noncompliance with Article 38.072's notice requirement, we also consider whether the defendant was surprised by the outcry testimony. *See Zarco v. State*, 210 S.W.3d 816, 832 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Any such error is also harmless if the same or similar evidence is admitted without objection at another point in the trial. *Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding erroneous designation of outcry witness under Article 38.072 was harmless because similar testimony was admitted through complainant); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding improper admission of outcry testimony was harmless because similar testimony was admitted through complainant, pediatrician, and medical records).

## C.    Analysis

Assuming, without deciding, that the trial court abused its discretion by allowing Carbajal to testify as an outcry witness even though his testimony was not

in compliance with Article 38.072 for one or more of the reasons set forth in Sosa's first three issues,[4] we will now assess whether any of these errors affected Sosa's substantial rights. *See* TEX. R. APP. P. 44.2(b).

Aside from Carbajal's testimony, the evidence supporting Sosa's guilty verdict consists of Jane's testimony, which not only includes the same relevant facts as Carbajal's testimony but also unequivocally identifies Sosa as the man who assaulted her by putting his penis inside her vagina, testimony from the DNA analyst that Sosa was a member of the fraction of one percent of the population that could not be excluded as a contributor to the DNA found in Jane's vagina the morning of the assault, testimony from Holcomb regarding Jane's detailed description of the assault, and SANE Rodgers's testimony and report regarding her medical evaluation of Jane. Jane's testimony and the DNA evidence that corroborates her testimony standing alone is substantial, if not overwhelming, evidence of Sosa's guilt.

Although Sosa may claim surprise that the State intended to call Carbajal as an outcry witness, Sosa should not have been surprised by the substance of Carbajal's testimony, particularly in light of the fact that Carbajal's testimony was

---

[4] The trial court heard arguments from Sosa and the State as to who the proper outcry witness should be during a bench conference held outside the jury's presence and before the commencement of trial. This bench conference is sufficient to satisfy Article 38.072's hearing requirement. *See Zarco v. State*, 210 S.W.3d 816, 831 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

almost identical to the outcry statement the State notified Sosa that it intended to admit through another witness. *See Zarco*, 210 S.W.3d at 833. Furthermore, the State did not emphasize Carbajal's testimony, or any other outcry statements in its brief closing argument, focusing instead upon Jane's testimony, the DNA evidence, and Sosa's videotaped statement to police given the day of the alleged assault.

Sosa argues that the admission of Carbajal's testimony was harmful because the jury heard from successive witnesses about what Jane told them and it strengthened the State's case. Although Carbajal, Holcomb, and Rodgers each testified about statements that Jane had made to them, Sosa did not object to Rodgers's testimony or to the admission of her report, both of which are virtually identical to one another in terms of the relevant substance, and similar in content to Carbajal's testimony. *See Sanchez v. State*, 269 S.W.3d 169, 172 (Tex. App.—Amarillo 2008, pet. ref'd) (rejecting defendant's argument that he was harmed by admission of hearsay testimony from officer reiterating what victim told him about assaults because "what we have before us is the same evidence being presented to the jury through multiple sources to prove the same facts. It is this redundancy or cumulative nature of the evidence that proves fatal to [defendant's] argument."); *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (stating "improper admission of evidence is not reversible error if the

same or similar evidence is admitted without objection at another point in the trial"); *Duncan*, 95 S.W.3d at 672. Additionally, although Sosa objected to Holcomb testifying as an outcry witness at trial, Sosa is not expressly challenging the admission of her testimony on appeal.

Given the substantial, if not overwhelming, evidence of guilt in this case, and the fact that similar evidence was admitted without objection from multiple sources, we are reasonably assured that any error in admitting outcry testimony in violation of Article 38.072 did not influence the jury's verdict in this case or had but a slight effect. *See* TEX. R. APP. P. 44.2(b); *Barshaw*, 342 S.W.3d at 93.

Accordingly, we overrule Sosa's first, second, and third issues.

**Cumulative Harm**

In his fourth issue, Sosa argues that the cumulative impact of the aforementioned errors deprived him of his right to a fair trial pursuant to both the federal and state constitutions. U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19. However, an allegation that the cumulative effect of two or more purported errors denies a defendant a fair trial is not a proper ground of error and thus presents nothing for appellate review. *See Stoker v. State*, 788 S.W.2d 1, 18 (Tex. Crim. App. 1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 110 S. Ct. 2301 (1990); *Ford v. State*, 14 S.W.3d 382, 395 (Tex. App.—Houston

14

[14th Dist.] 2000, no pet.); *Lape v. State*, 893 S.W.2d 949, 953 (Tex. App.—

Houston [14th Dist.] 1994, pet. ref'd).

We overrule Sosa's fourth issue.

### Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Justices Keyes, Huddle, and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).