**Opinion filed September 19, 2024**



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00155-CR

_____

## MICHAEL MCMILLIAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 29918-A**

### M E M O R A N D U M   O P I N I O N

Michael McMillian, Appellant, was indicted for four counts of aggravated assault, one count of unlawful possession of a firearm, and one count of possession of a controlled substance. TEX. PENAL CODE ANN. §§ 22.02(a)(2), (b), 46.04(a)(1), (e) (West Supp. 2023); TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (West Supp. 2023). The jury found Appellant guilty of all six counts and the trial court

assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for terms ranging from forty years to life—all to run concurrently. Appellant raises a single issue on appeal: that his two convictions for aggravated assault against the same victim, as alleged in Count I and Count III, violate the Double Jeopardy Clause of the Fifth Amendment. We affirm.

*Factual and Procedural History*

Appellant does not challenge the sufficiency of the evidence to support his convictions, only that the law prevents two convictions for aggravated assault against the same victim. Consequently, we recite only the facts necessary to address the sole issue on appeal.

On April 15, 2021, Tahnee Meeks, an emergency medical technician (EMT), and her partner Zach Bangert, a paramedic, responded to a wellness check involving Appellant. Before Meeks and Bangert were called, the police and a critical response team (CRT) responded. The CRT unit believed Appellant had a chemical imbalance and wanted Appellant transported to the hospital—Meeks and Bangert responded to that call. After getting Appellant into the ambulance, Appellant's jacket was removed, and Meeks checked his vitals. Following his vitals check, Meeks had Appellant move onto the gurney in the ambulance. Appellant was then transported to the hospital, with Meeks driving and Bangert sitting in the back of the ambulance with Appellant. While the ambulance was stopped at a red light, Appellant got up from the gurney and reached for his jacket. Both Meeks and Bangert asked Appellant to sit back down, but Appellant refused. Bangert got up to move Appellant back onto the gurney, but then Appellant pulled a gun and pointed it at him. Bangert held up his hands and backed away and attempted to use the radio. Appellant told Bangert not to use the radio, and Meeks attempted to switch the channels on the radio from the hospital channel to the Metro channel. Appellant told Meeks to stop what she was doing and then pointed the gun at her.

While Appellant was focused on Meeks, Bangert was able to jump up and push the gun away. During the confrontation, two shots were fired. Meeks testified that the first shot occurred while she was still in the driver's seat, and the second was after she got out of the ambulance and moved toward the back doors of the ambulance. Meeks hesitated in opening the back doors because she could not see what was happening. When the second shot was fired, Meeks moved back to the driver's seat to call in that a "second shot [was] fired," and to get a better look at what was happening. After that, Bangert called out for Meeks to "open the back doors."

When Meeks opened the back doors, she saw Appellant and Bangert still struggling. Appellant was holding a knife and making stabbing motions. Bangert was injured from the knife. Meeks told the jury that she jumped into the ambulance to grab Appellant's arm and force the knife away from Bangert. When she did this, Appellant repositioned the knife and pointed it at Meeks. Meeks was eventually able to get the knife away from Appellant, and she and Bangert were able to restrain Appellant until law enforcement arrived.

Counts I and III of the six-count indictment charged Appellant with committing aggravated assault against Meeks, but differed in the respective deadly weapons alleged: a firearm in Count I, and a knife in Count III. During trial, Meeks identified Appellant as the man who threatened her with a gun and a knife, and she testified that each time, she feared for her life. Although Appellant testified that he never intended to shoot or stab anyone, the jury found Appellant guilty of both counts of aggravated assault against Meeks. The trial court sentenced Appellant to imprisonment for life for Count I and for a term of seventy-five years for Count III.

In Appellant's sole issue on appeal, he claims that his convictions for aggravated assault in Count I and Count III violate the state and federal protections

against double jeopardy.[1]  *See* U.S. CONST. amend. V; TEX. CONST. art. 1, § 14.  The State disagrees, and argues that the two events were separate and distinct offenses during the same criminal transaction.

*Standard of Review and Applicable Law*

To preserve a double jeopardy complaint, the burden is on the defendant to raise—in some way—a double jeopardy objection "at or before the time the charge is submitted to the jury."  *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006) (citing *Gonzalez v. State*, 973 S.W.2d 427, 431 (Tex. App.—Austin 1998), *aff'd*, 8 S.W.3d 640 (Tex. Crim. App. 2000)).  However, because double jeopardy protections are fundamental, a double jeopardy claim may be raised for the first time on appeal if: (1) "the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record" and (2) "when enforcement of the usual rules of procedural default serves no legitimate state interest."  *Id.* (citing *Gonzalez*, 8 S.W.3d at 643 (footnotes omitted)).  Because Appellant did not raise any double jeopardy objections prior to the jury receiving the charge, we must consider whether the undisputed facts show a violation on the face of the record.  *See Sledge v. State*, 666 S.W.3d 592, 599 (Tex. Crim. App. 2023); *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).  If such error is apparent, we must determine if there is a legitimate state interest served in preventing the issue from being raised on appeal.

"A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of

---

[1]In this appeal, Appellant's first court-appointed appellate counsel submitted an *Anders* brief and filed a motion to withdraw.  *See Anders v. California*, 386 U.S. 738 (1967).  Following the procedures set forth in *Anders*, *Kelly v. State*, 436 S.W.3d 313 (Tex. Crim. App. 2014), and *In re Schulman*, 252 S.W.3d 403 (Tex. Crim. App. 2008), we independently reviewed the record and concluded that these appeals were not particularly amenable to disposition under *Anders*.  We granted appellate counsel's motion to withdraw, abated the appeal, and remanded the case to the trial court with instructions to appoint new appellate counsel.  New appellate counsel was directed to file a brief on the merits and address any substantive issues that appellate counsel deemed to be arguable.  This appeal was reinstated after the trial court appointed new appellate counsel.

introducing additional evidence in support of the double-jeopardy claim." *Llorens v. State*, 520 S.W.3d 129, 133 (Tex. App.—Austin 2017, pet. ref'd) (quoting *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013)).

The Fifth Amendment provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The United States Supreme Court has concluded that the Fifth Amendment offers three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006) (citing *N.C. v. Pearce*, 395 U.S. 711, 717 (1969) *overruled on other grounds by Ala. v. Smith*, 490 U.S. 794 (1989)). The Double Jeopardy Clause imposes few, if any, limitations on the legislative power to establish and define offenses. *Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999) (citing *Brown v. Ohio*, 432 U.S. 161 (1977)). The legislature, therefore, determines whether offenses are the same for double jeopardy purposes by defining the "allowable unit of prosecution." *Id.* (citing *Sanabria v. United States*, 437 U.S. 54, 69–70 (1978)).

To determine whether there are multiple convictions for the same offense, we first apply the "same elements" test laid out in *Blockburger*. *Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018). Under the *Blockburger* test, "two offenses are not the same if each provision requires proof of a fact which the other does not." *Id.* (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). In Texas, we look to the pleadings and relevant statutory provisions—not to the evidence presented at trial—to inform this test. *Nawaz v. State*, 336 S.W.3d 739, 744 (Tex. Crim. App. 2022); *Bien*, 550 S.W.3d at 184. If the two offenses have the same elements, a judicial presumption arises that the offenses are the same for purposes of double jeopardy. *Bien*, 550 S.W.3d at 184. This presumption can be rebutted by

a clearly expressed legislative intent to create two separate offenses. *Id.* If, however, the two offenses do not have the same elements, the judicial presumption is that the offenses are different for double jeopardy purposes and multiple punishments are permitted. *Id.* at 185. This presumption can be rebutted if it is clear the legislature intended that only one punishment be assessed. *Id.*

The legislature also decides whether a particular course of conduct involves one or more distinct offenses under a given statute. *Barnes v. State*, 665 S.W.3d 192, 201 (Tex. App.—Eastland 2023, no pet.) (citing *Bien*, 550 S.W.3d at 185)). This is referred to as the "allowable unit of prosecution." *See Cavazos*, 203 S.W.3d at 336. "Absent an express statement defining the allowable unit of prosecution, the gravamen of an offense best describes the allowable unit of prosecution." *Loving v. State*, 401 S.W.3d 642, 647 (Tex. Crim. App. 2013) (citing *Gonzales v. State*, 304 S.W.3d 838, 847–48 (Tex. Crim. App. 2010); *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999)). "[T]he gravamen of an offense can be (1) the result of the conduct, (2) the nature of the conduct, or (3) the circumstances surrounding the conduct." *Id.*

*Analysis*

Appellant's double-jeopardy complaint rests on his two convictions for assaultive offenses arising from the same criminal episode, against the same victim. The offense itself is the same for both counts—the only difference is the type of deadly weapon used to commit the aggravated assault. However, on the occasion that "separate and distinct offenses occur in the same transaction, the protection against double jeopardy does not apply." *Urtado v. State*, 333 S.W.3d 418, 424 (Tex. App.—Austin 2011, pet. ref'd) (citing *Spradling v. State*, 773 S.W.2d 553, 556 (Tex. Crim. App. 1989)). Thus, if two distinct acts of assault occur, even if close in time, the defendant may be charged with two separate counts of assault. *Id.* (*Comparing Sanchez v. State*, 269 S.W.3d 169, 171 (Tex. App.—Amarillo 2008,

6

pet. ref'd) (holding that no double jeopardy violation occurred where defendant was charged with both assault by causing bodily injury and assault by threat against same victim because, "[t]hough rather close in time, the latter arose after a break from the former"), *with Teeter v. State*, No. PD-1169-09, 2010 WL 3702360, at *6 (Tex. Crim. App. Sept. 22, 2010) (not designated for publication) (holding that double jeopardy violation occurred where charges of assault by threat and attempted capital murder were both based on a single act of pointing gun at victim)).

In *Urtado v. State*, the appellant raised a double jeopardy complaint for his convictions for one count of assault by causing serious bodily injury and one count of assault by threatening bodily injury against the same victim. 333 S.W.3d at 424. The victim was hit, and her hair was pulled while being dragged up the stairs. *Id.* Then, the appellant shifted to focus on another victim, attacking with a knife. *Id.* After that, the appellant announced to the entire room—the first victim was also present—that he was going to kill all of them. *Id.* The Third Court of Appeals concluded that there was no double jeopardy violation on the face of the record because, based on the evidence the assault by threat was a separate event from the assault causing bodily injury. *Id.* at 424–25.

Here, as in *Urtado*, each aggravated assault against Meeks was a distinct event. Appellant first pointed his gun at Bangert and Meeks while they were all in the ambulance; thereby completing the first aggravated assault using a gun. Once Appellant shifted his focus to Meeks, Bangert attempted to stop Appellant. Meeks radioed in that shots were fired and got out of the ambulance and moved toward the rear of the ambulance. Meeks then went back to the front of the ambulance to report another shot and assess the situation. During that time, Appellant was not pointing a gun at Meeks, and she was removed from his immediate area. Then, Meeks heard Bangert ask her to open the ambulance back doors. She returned to the back of the ambulance and opened them, noticing that Appellant also had a knife and was

7

attempting to stab Bangert. In an effort to stop Appellant, Meeks gained control of Appellant's arm, at which point, he turned the knife on Meeks and attempted to stab her as well, which supports the second conviction for aggravated assault using a knife. Meeks testified that, in each instance, she was in fear for her life.

The testimony shows there was a separation—though short—between the first time Appellant threatened Meeks with a gun, and the second time Appellant threatened Meeks with a knife. Meeks described the time in which she was not in the ambulance and was not in a direct struggle with Appellant. Meeks additionally was able to radio for help two times, once at the end of the first threat, and again right before the second threat. Double jeopardy defines the "same offense" as identical criminal acts—not merely the same offense by name. *See Ex parte Goodbread*, 967 S.W.2d 859, 860 (Tex. Crim. App. 1998) (citing *Luna v. State*, 439 S.W.2d 854, 855 (Tex. Crim. App. 1973)). Here, Appellant was charged with, convicted of, and punished for two separate violations of a single statutory offense. Therefore, the double jeopardy protections are not implicated here. *See Urtado*, 333 S.W.3d at 424. Because there is no double jeopardy violation on the face of the record, we overrule Appellant's sole issue.

## *Modification of Judgments*

While we overrule Appellant's sole issue on appeal, we note that the trial court's judgments contain a clerical error.[2] This court has the authority to modify a judgment to correct a clerical error when the evidence necessary to correct the judgment appears in the record. *See* TEX. R. APP. P. 43.2; *Arndt v. State*, No. 11-20-00032-CR, 2021 WL 5934652, at *3 (Tex. App.—Eastland Dec. 16, 2021, pet. ref'd) (citing *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993)). In the Judgment of Conviction for Count I—aggravated assault—the record reflects that Appellant

---

[2] We note that the judgments for Counts II, IV, V, and VI all contain the same error, but as they are not at issue on appeal, we only modify the judgments for Count I and Count III.

elected for the trial court to assess punishment, but the judgment reflects it was assessed by the jury. We modify the Judgment of Conviction for Count I to reflect that punishment was assessed by the trial court. In the Judgment of Conviction for Count III—aggravated assault—the error is the same. We modify the Judgment of Conviction for Count III to reflect that punishment was assessed by the trial court.

*This Court's Ruling*

We affirm the judgments of the trial court as modified.


W. BRUCE WILLIAMS

JUSTICE


September 19, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.